HOGARTH SHIPPING CO., Limited, v. FEDERAL SUGAR REFINING CO. MANCHESTER & SALFORD S. S. CO., Limited, v. SAME. FEDERAL SUGAR REFINING CO. v. MANCHESTER & SALFORD S. S. CO., Limited.

(District Court, S. D. New York. December 2, 1909.)

EVIDENCE (§ 333*)—SHIPPING (§ 58*)—DELIVERY OF CARGO—DISPUTE AS TO QUANTITY—EVIDENCE—GOVERNMENT TALLIES.

 Delivery of sugar cargoes at Yonkers, New York. Disputes as to the quantities delivered by the steamships determined in favor of the government tallies and the respondent's tallies. Also *held* that the cross libellant was entitled to recover wharfage.

 [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1247–1257, 1259–1265; Dec. Dig. § 333;* Shipping, Dec. Dig. § 58.*]

(Syllabus by the Judge.)

Actions by the Hogarth Shipping Company, Limited, and by the Manchester & Salford Steamship Company, Limited, against the Federal Sugar Refining Company. Judgments dismissing the libels, and rendering decree for the Federal Sugar Refining Company on its cross-libel.

Convers & Kirlin, for Hogarth Co. and Manchester & Salford Co.
Ernest A. Bigelow and James T. Kilbreth, for Federal Refining Co.

ADAMS, District Judge. The Hogarth Shipping Company brought the first of the above entitled actions against the Federal Sugar Refining Company, to recover a balance of charter hire of the steamship Baron Cawdor, amounting to $513.46, alleged to have been earned

---

under charter party dated at Hamburg, Germany, May 5, 1908. The said sum of $513.46 consists of $499.58, the freight on 49,510 bags of sugar and an additional claim of $13.88 for freight on 102 bags of sugar, claimed to have been delivered in excess of the bill of lading quantity of 49,510 bags.

The defence is that the libellant did not deliver the 49,510 bags but only 49,423 bags, weighing 10,864,686 pounds, together with 59,326 pounds of sweepings, and the invoice value of the missing sugar was upwards of $499.58, which sum the respondent retained from the freight, and the respondent denies that there was any freight earned in excess of that on the said quantity delivered.

The second action was in behalf of the Manchester & Salford Steamship Company, Limited, against the Federal Refining Company to recover $213.60, the value of 43 bags of sugar delivered to it by mistake, and for $45.99, the freight on 254 bags of sugar delivered in excess of the bill of lading quantity, and for $629.69, improperly deducted by the respondent because of alleged shortage. These amounts aggregate $889.28.

The defence is a denial of the libellant's allegations with respect to the sum of $213.60 and $45.99, and a further allegation that the libellant delivered a portion of the sugar in a damaged condition and further failed to deliver the full amount of sugar called for by bills of lading held by the respondent, whereby the respondent suffered loss and damage, $629.69, of which it has retained $607.55 out of the freight. And the respondent further alleged that the Salfordia incurred wharfage charges at the respondent's wharf amounting to $103.74, which it also seeks to recoup and set off.

The third action was a cross libel in the second action on the part of the Federal Refining Company against the Manchester & Salford Steamship Company, Limited, to recover for 123 bags not delivered. The alleged value of the missing bags was $629.69, as above stated, and the further claim is for the above mentioned wharfage of $103.74, making in all $733.43, of which $607.55 has been deducted from the freight as above stated, leaving a balance due of $125.88.

The answer to this cross libel alleges that 43 bags of sugar, of the value of $213.60, were delivered by mistake by the steamship Salfordia, which were not its property, but the property of B. H. Howell, Son & Company; it also alleges that 254 bags of sugar were delivered by the Salfordia to the cross libellant in excess of the quantity called for by the bills of lading and the freight thereon amounted to $45.99, which is due to the respondent; it also alleges that the cross libellant has deducted $629.69 from the freight due the respondent because of an alleged shortage in delivery of 123 bags of sugar. These sums aggregate $889.29, which is the subject of the second above entitled actions.

There does not seem to be any dispute about the wharfage, $103.74, being due to the Refining Company, and the controversy really is concerning the number of bags of sugar on the Baron Cawdor and the freight on the alleged excess delivered by the same vessel over the bills of lading quantity.

The libellant says, in its brief, in the first mentioned action:

"The only question in this case is whether the vessel delivered 49,612 cargo bags of sugar as the libellant claims, or only 49,423 as the respondent claims."

The respondent, in its brief in the same action, says:

"Respondent claims a short delivery of 87 bags, the value whereof, $499.58, has been deducted from the freight money."

Other features of the controversy are mentioned below in the consideration of the case of the S. S. Salfordia.

### S. S. Baron Cawdor.

First considering the Hogarth case, the libellant's claim is based upon the testimony of the tally men who kept a record of what they claimed was discharged by the vessel. Their tally books, however, do not commend themselves favorably because there are admitted errors in them, for example on June 23d, one of the tally men recorded a discharge of 1,771 bags while his companion, who was keeping tally in practically the same place has it on his book that 1,759 bags were discharged. On the same day there was a discrepancy between 1,831 bags and 1,838 bags. The appearance of the books otherwise was not such as to create an impression of their reliability.

On the other hand, the tally kept by the Refining Company appears to be correct and is corroborated by a transcript from the weighers' dock book, filed in the Custom House and certified by an assistant Deputy Surveyor of the Port. This was not proved in detail but formal proof thereof was waived by the libellant.

With respect to the transcript, it is provided that if any part of a vessel's cargo is unloaded without a permit by the proper officer of the customs, the officer in command of the vessel shall be liable to a penalty (Rev. St. U. S. § 2867 [U. S. Comp. St. 1901, p. 1908]); that the said permit shall specify the number and description of the packages (Id. § 2870 [page 1909]); that the master, with certain exceptions, shall be liable to a penalty in case of shortage (Id. § 2887 [page 1916]). It is made the duty of the U. S. Naval Officer to examine whether the deliveries of goods imported in a vessel correspond with the landing permits and if there is any error or disagreement to report the same to the collector (Id. § 2627, subd. 6 [page 1811]) and the weighers, etc., are required to make returns of the discharge of vessels in books prepared by them for the purpose and kept in the Custom House.

It is contended by the libellant that the certified copy of the transcript called a "freight sheet," is not proof of the statements of weights which it contains "for any purpose except as it might show the amount of the duty demanded by the government." It seems, however, to come within the rule that admits in evidence records kept by persons in public office, where they are required to write down particular transactions occurring in the course of their duties. Greenleaf on Evid. § 483; Galt v. Galloway, 4 Pet. 332, 341, 7 L. Ed. 876. Here was a record kept in the manner indicated and it contains this notation, opposite an entry of 500 bags, viz.: "87 not found 413 bags," and the weight column shows 90,508 (pounds) while the remaining entries of

the same quantity of bags show upwards of 109,000 (pounds). According to the government certificate, therefore, the ship discharged 49,423 bags, showing a shortage of "87 not found" as stated above.

The respondent's tally was exactly the same. The bill of lading quantity was 49,510 bags. There having been delivered 49,423 bags only, the shortage of 87 bags, as claimed by the respondent, was established.

The libellant contends, however, that the respondent's tally does not show the number of bags actually delivered by the libellant over the ship's side and quotes from the charter party that the cargo was to be "taken from alongside at merchant's risk and expense." It also quotes from the bill of lading: "Twelfth: Goods to be taken from the ship by the Consignees directly they come to hand in discharging the ship, and the Carrier's responsibility to cease package by package, immediately the goods leave the ship's deck or tackle, * * *" and contends that as the other tallies were made at some distance from the side of the ship, from 35 feet to 30 yards. they should not be depended upon to the same extent as the ship's tallies which were made as the bags went over the side.

It would be extremely technical to hold in a case of this kind, that testimony of what occurred a short distance from the side of the vessel should not be considered as against testimony of those on board of the vessel. The witnesses away from the vessel did not see everything that took place on or near the ship, but there is no contention, and could not reasonably be, that anything affecting the cargo occurred after it left the ship and before reaching the scales, where the outside witnesses took charge of it. I think there can be no doubt that all of the bags that were discharged reached the scales, together with the sweepings which were placed in bags but not counted as bags of cargo.

The libellant further contends that apart from the tallies, the evidence shows that all of the cargo loaded on the ship was delivered to the respondent but I doubt if testimony to this effect tends to establish the delivery of all of the cargo that was loaded on the vessel. The tallies showed an unmistakable deficiency in the delivery and if the libellant could not account for it, it should suffer the loss.

So far from there being an excess delivery as claimed by the libellant, there was actually a deficiency, as above stated.

## S. S. Salfordia.

This action was to recover a balance of freight money, $629.69, for freight alleged to have been earned in excess of the bill of lading quantity, $45.99, also for $213.60, the value of 43 bags, the property of B. H. Howell, Son & Company, not parties to this action, delivered by mistake to the respondent, making a total of $889.28.

The cross libellant also claims to be entitled to recover $103.43, wharfage, which is not vigorously disputed.

With respect to the claim for $629.66, the testimony shows a short delivery of 123 bags, amounting to that sum.

That there was such a short delivery appears by the returns of the government weighers, certified copies of which have been offered in evidence. What has been said in the S. S. Baron Cawdor case, supra,

with regard to a similar document is equally applicable here. These are corroborated by the tallies of the Refining Company's clerks and it must be regarded that the deficiency in the quantity delivered was duly established. Also what has been said in the Cawdor case, in connection with the method of delivery, is equally pertinent here and it need not be repeated.

The claim for the value of 43 bags of the Howell shipment does not exist because the goods were sent from Yonkers by a lighter to the Howells. In any event, the libellant is not in any way entitled to recover on the claim.

The sum of $103.74 for wharfage is due to the cross libellant and to this sum should be added the difference between $607.55 and the value of the deficient sugar $629.66, viz.: $22.11, making a total of $125.88, for which a decree may be entered in favor of the cross libellant, unless there is some question about the figures, in which case a reference will be had. The libels of the Hogarth Company and of the Manchester and Salford Company are dismissed.